PATTERSON BELKNAP WEBB & TYLER LLP
Philip R. Forlenza (PRF 5778)
Gloria C. Phares (GCP 7611)
Carrie A. Syme (CAS 4192)
Krista D. Caner (KDC 7358)
1133 Avenue of the Americas
New York, New York 10036-6710
Telephone:      (212) 336-2000

*Attorneys for Defendant MediZine LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

|  |  |  |
|---|---|---|
| MARKETING TECHNOLOGY SOLUTIONS, INC., | : | |
| Plaintiff, | : | |
| - against - | : | NO. 09 CIV. 8122 (LM) |
| MEDIZINE LLC, DANIEL BRANDT, MICHAEL ROWSOM, and ETRUVIAN, INC., | : | |
| Defendants. | : | |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
MEDIZINE'S MOTION FOR ORDER TO SHOW CAUSE TO
DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF FACTS ......................................................................................1

ARGUMENT ..........................................................................................................4

    I.     THIS COURT SHOULD GRANT SUMMARY JUDGMENT AS TO MTS'S
          COPYRIGHT INFRINGEMENT CLAIMS IN COUNT I ..................................4

          A.   Summary Judgment Is Appropriate As To The Use Of The New
                MediZine Software ................................................................................5

          B.   Summary Judgment Is Appropriate With Respect To The Use Of
                iConnect ...............................................................................................6

    II.    MTS'S LACK OF A COPYRIGHT REGISTRATION DEPRIVES THIS
          COURT OF JURISDICTION OVER MTS'S COUNT II INFRINGEMENT
          CLAIM REGARDING THE ICONNECT SOFTWARE.....................................10

    III.   MTS'S COMPUTER FRAUD AND ABUSE ACT CLAIM AGAINST
          MEDIZINE FAILS AS A MATTER OF LAW ............................................11

    IV.   THE REMAINDER OF MTS'S CLAIMS SHOULD BE DISMISSED FOR
          LACK OF SUBJECT MATTER JURISDICTION .............................................16

    V.    COSTS AND ATTORNEY'S FEES PURSUANT TO SECTION 505...............17

CONCLUSION........................................................................................................17

## PRELIMINARY STATEMENT

Plaintiff Marketing Technology Solutions, Inc. ("MTS") filed the present complaint on September 22, 2009, asserting a number of claims against Defendants, including Defendant MediZine LLC ("MediZine"). These claims include those arising under the Copyright Act, 17 U.S.C. §§101 *et seq*, and the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1830. However, because MTS has failed to establish claims under either of these Acts as a matter of law, MediZine requests that the Court grant MediZine's motion for: (a) summary judgment to MediZine as to MTS's claim of copyright infringement pursuant to Federal Rules of Civil Procedure 56(b); (b) dismissal of Count VII of the Complaint alleging a violation of the Computer Fraud & Abuse Act, 18 U.S.C. § 1030 (1), pursuant to Federal Rules of Civil Procedure 12(b)(6); and (c) dismissal of the remainder of the case for lack of jurisdiction pursuant to 17 U.S.C. § 411(a).

## STATEMENT OF FACTS

"Promotion Serving Platform Software" or "PSP" is the name of a "lead-generation" computer program (or software) in the healthcare field, which means that it is software that develops leads to customers. (Declaration of Gloria C. Phares, Exh. A, ¶ 2 (Complaint)).[1] "iConnect" is the name of a lead-generation computer program created by Defendant eTruvian Inc., for use in the healthcare field and used by Defendant MediZine during a period of time beginning sometime in 2007 and ending on September 30, 2009. (Exh. B, at 2;

---

[1]      Because all the Exhibits in this motion refer to the Phares Declaration, all subsequent citations will refer only to the Exhibits.

1

Exh. C at 12:5-7).[2] MTS has asserted ownership over both of these programs (Exh. A, ¶¶ 59, 68).

The Copyright Office issued two registrations, TX 6-938-819 and TX 6-938-643, each with an

effective date of June 22, 2009, for two different versions of PSP.  (Exh. A (Complaint, Exhs. B

and C)).  No registration was obtained or requested for the iConnect Software.

      The "New MediZine Software" refers to a lead-generation computer program

created by MG LLC d/b/a Tranzact ("Tranzact") for defendant MediZine, which MediZine

began using on October 1, 2009, and which MediZine continues to use. (Exh. D. at ¶ 4; Exh. C at

12:2-9).

**Preliminary Injunction Motion and October 1 Hearing**

      On September 24, 2009, MTS moved for a preliminary injunction seeking to

enjoin MediZine from using the iConnect software and sought expedited discovery in support of

its motion.  (Exh. E).  Before an October 1, 2009 conference with the Court to address this

motion, MediZine notified MTS's counsel that MediZine was in the process of implementing a

new software platform and informed MTS that it was independently created.  MediZine also told

MTS that it would be willing to enter into a consent order with respect to any further use of the

iConnect software.  (Exh. C at 5:19-6:1).  Despite these representations, MTS sought expedited

discovery "to confirm what Medizine is telling us" and that its new software was not a copy of or

derivative of MTS's PSP software.  (*Id.* at 6:12-16).

---

[2]    At the October 28, 2009 conference before the Court, MTS's counsel repeatedly asserted that
MediZine continued to "run" iConnect's software after October 1.  Those assertions were incorrect.
Instead, as the declaration of Mr. Michael Cunnion, MediZine's President, makes clear, the MediZine
website and server inadvertently maintained a few remnants of the iConnect system.  (Declaration of
Michael Cunnion).   These remnants were either simple pieces of HTML codes providing links to the
former site's terms of use at the bottom of MediZine webpages or an old website that allowed clients to
view their advertising campaigns; the New MediZine Software uses a different website and clients have
been directed to access this new site since October 1. (Exh. B, ¶ 8-13).  As of the morning of October 28,
these remnants had been removed from MediZine servers. (*Id.*, ¶¶ 9,13).

At the October 1, 2009 conference, MediZine agreed to have experts from each side examine the source code of the other under a protective order, even though it did not believe that MTS had made a showing that it was facing imminent harm during the period when MediZine was using its new software. (*Id.* at 16:7-17:21, 18:11-19:18).

**Retention of Experts and the Exchange of Source Code**

The next day, October 2, 2009, MTS notified MediZine that it had retained Elysium Digital to assist it in the source code review, attaching the curriculum vitae of 13 people. (Exh. F). MTS's experts gained access to the New MediZine Software on October 9, 2009. (Exh. G). On October 11, 2009, MediZine notified MTS that it had retained Jeff Parmet as its expert. (Exh. H). On October 14, 2009, nearly two weeks after notifying MediZine that Elysium Digital was its expert, MTS notified MediZine that it had retained a testifying expert, Benjamin Goldberg, and attached his curriculum vitae. (Exh. I.)

On October 26, 2009, MediZine and MTS exchanged the reports of their experts. (Exh. J). MediZine's expert, Jeff Parmet, submitted a report and voluminous exhibits reflecting the results of his comparisons of the PSP, iConnect, and New MediZine Software programs. (Exh. K, filed under seal). Dr. Goldberg, in paragraphs 35 through 37 of his report, discusses purported similarity between PSP and NMS. Dr. Goldberg does not claim that this similarity is literal similarity—that is, that a string of code appears in both PSP and NMS. The only similarity Dr. Goldberg found between PSP and NMS was a single point of non-literal similarity: the process or method by which the two programs rank and order advertisements to be shown to the users of the parties' websites. (Exh. L, filed under seal, ¶ 35). With respect to this similarity, Dr. Goldberg claims that the similarity is found in the method by which this ranking and

ordering of advertisements occurs.  He does not assert that there is any similarity in the

expression of that method, which would be evidence of literal copying.[3]

        Dr. Goldberg identified one file (engine.js) in the iConnect code that he described

as "virtually identical" to an engine.js file found in PSP.  (Exh. L, ¶¶ 2).  From this, he concluded

that "the PSP engine.js was copied virtually wholesale into the iConnect code."  (*Id.* ¶ 23).  Mr.

Parmet, MediZine's expert also noticed the same similarity of code.  (Exh. K, ¶ 35.g).  Mr.

Parmet's observations show that the two files are not "virtually identical":  the iConnect files

contains only 432 lines of the 739 lines of code in the PSP file.  (*Id.*, ¶ 35.g.i.; Parmet Decl. ¶ 5).

Mr. Parmet also observed that the engine.js file "is not actually being used by the iConnect code

and provides no functionality to the iConnect code."  (Exh. K, ¶ 35.g.ii; Parmet Decl. ¶ 6).

## ARGUMENT

### I.      THIS COURT SHOULD GRANT SUMMARY JUDGMENT AS TO MTS'S COPYRIGHT INFRINGEMENT CLAIMS IN COUNT I

        Summary judgment should be granted whenever the evidence shows that there "is

no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  Fed. R. Civ. P. 56(c).  In a suit for copyright infringement, a plaintiff must

establish both that it owns a valid copyright and that the defendant copied constituent elements

of the work that are original.  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361

---

[3]     Based on the "time constraints based on the schedule in this matter," Dr. Goldberg attempted to hedge the "exhaustive[ness]" of his report of the instances of copying of PSP code into the New MediZine Software and the iConnect software, implying that there might be more. (Exh. L, ¶ 9).  The suggestion of insufficient time seems odd when MTS apparently had 14 people available to work on the comparison during the same period that it took MediZine's expert (with a staff of 4) to do an exhaustive comparison.  The parties were given the same source code materials to review for evidence of infringement within the same two-week timeframe set by the Court.  The parties were directed to disclose their experts' opinions on infringement at the end of the two-week period, which they did.  Dr. Goldberg may not keep other opinions "in reserve" and surprise the parties with these opinions at a later date.

(1991).  With respect to the second prong, not all copying is actionable.  Instead, a plaintiff must

demonstrate that the allegedly infringing material bears a substantial similarity to copyrightable

elements of plaintiff's work.  *Torah Soft Ltd. v. Drosnin*, 136 F. Supp. 2d 276, 282 (S.D.N.Y.

2001) (citing *Arica Inst., Inc. v. Palmer*, 970 F.2d 1067, 1072 (2d Cir. 1992)).  The *Torah Soft*

Court continues:

> Defendants are entitled to summary judgment if they can show that "at
> least one requisite element of the claim cannot be proven." *Cantor v. NYP
> Holdings, Inc.*, 51 F.Supp.2d 309, 311 (S.D.N.Y. 1999).  Although the
> question of substantial similarity often raises questions of fact not
> appropriately resolved on a motion for summary judgment,
> noninfringement may be decided as a matter of law "either when the
> similarity concerns only noncopyrightable elements of plaintiff's work, or
> when no reasonable trier of fact could find the works substantially
> similar." *O.P. Solutions, Inc. v. Intellectual Prop. Network, Ltd.,* No. 96
> Civ. 7952, 1999 WL 47191, at *5 (S.D.N.Y. Feb. 2, 1999) (quotation
> marks, citation, and alteration omitted).

*Id.*

A.    **Summary Judgment Is Appropriate As To The Use Of The
      New MediZine Software**

The only similarity that MTS's expert identifies between PSP and the New

MediZine Software is the process by which the programs rank and order advertisements to be

shown to users of the parties' websites.  (Exh. L, ¶35).  However, as a matter of law this process

is not protectable under the Copyright Act.

Section 102(b) of the Copyright Act provides that "[i]n no case does copyright

protection for an original work of authorship extend to any idea, procedure, **process,** system,

**method of operation,** concept, principle, or discovery, regardless of the form in which it is

described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b) (emphasis

added)  It is undisputed that the so-called computation in question is simply a process or a

method of operation.  Thus, in describing this process, Dr. Goldberg explicitly refers to it as a "ranking method" (¶ 35); a "ranking function" (¶ 35); and a "calculation" (¶ 27).

The method of ranking and ordering advertisements described by MediZine's expert—whether called a method, a calculation, a process, or the more prestigious-sounding term "algorithm"—is a method of operation to which, as a matter of law, copyright protection does not extend, and an infringement claim based on any alleged similarities in that method or process will fail. *See Torah Soft Ltd.,* 136 F.Supp. 2d at 291 ("An algorithm, however, is clearly a method of operation which cannot be protected"); *O.P. Solutions, Inc. v. Intellectual Property Network, Ltd,* 1999 WL 47191, *16 (S.D.N.Y. Feb. 2, 1999) ("Because methods of operation are precluded from protection under § 102(b), any elements from the list which purport to protect such processes or methods of operation are not entitled to protection.  [T]o the extent OPS seeks to protect the functions that the grid performs, those functions are unprotectable under § 102(b)"(citation omitted)); *see also eScholar, LLC v. Otis Educational Systems*, 04 Civ. 4051, 2005 U.S. Dist. LEXIS 40727, *61 (S.D.N.Y. Nov. 3, 2005).

As a result, because MTS's only alleged similarity between the PSP software and the New MediZine Software is a "noncopyrightable element," summary judgment in favor of MediZine is appropriate. *See, e.g., O.P.* Solutions, 1999 WL 47191, at *5.

**B.      Summary Judgment Is Appropriate With Respect To The Use Of iConnect**

1. <u>MTS has failed to state a claim for infringement</u>

To the extent that Plaintiff alleges that MediZine has infringed PSP's copyright by using iConnect, this claim is also appropriate for dismissal.  Plaintiff's expert has identified only two instances where he believes copying has occurred.  Neither of these, however, is sufficient to state a claim for copyright infringement as a matter of law.  First, MTS's expert

6

identifies the same similarity between the process by which the programs rank and order advertisements as discussed above.  (Exh. L, ¶35).  For the reasons stated above, this "process" is not protectable as a matter of law.  *Supra*, pp. 9-10.

> The other similarity that MTS's expert identifies between PSP and iConnect is that a file titled "engine.js" is found in both sets of software.[4]  (Exh. L, ¶¶ 22-23).  However, even if the court assumes that these two files are identical, to survive a motion to dismiss a plaintiff must also demonstrate that the two software programs are substantially similar *overall*.  *Repp v. Webber*, 132 F.3d 882, 889 n. 1 (2d Cir. 1997) ("After a plaintiff has proved copying, he must then show that the copying was unlawful by establishing 'substantial similarity' between the works at issue.") (citation omitted); *Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*, 25 F.3d 119, 123 (2d Cir. 1994) ("A plaintiff with a valid copyright proves infringement by demonstrating that: (1) the defendant has actually copied the plaintiff's work; *and* (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectable elements of plaintiff's."); *Torah Soft*, 136 F. Supp. 2d at 282 ("[N]oninfringement may be decided as a matter of law 'either when the similarity concerns only noncopyrightable elements of plaintiff's work, or when no reasonable trier of fact could find the works substantially similar.') (quoting *O.P. Solutions*, 1999 WL 47191, at *5).

> Plaintiff cannot establish substantial similarity.  In this instance, PSP consists of 953,612 lines of code, and iConnect contains 233,751 lines of code.  (*See* Exh. K, ¶¶ 20,26).  Of those, only 437 lines of code are even allegedly similar.  (*See* Exh. K, ¶¶ 35.g.i; Parmet Decl. ¶5).  Furthermore, these lines of code—those found in engine.js in the iConnect software—do not

---

[4] In the PSP software, the file titled "engine.js" is 739 lines of code while the file in iConnect is 437 lines of code, of which only 432 lines of which are identical to PSP's "engine.js" file. (*See* Parmet Decl. ¶ 5.) Any assertion by MTS that these two files are identical is incorrect.

serve any function at all in iConnect. (*See* Exh. K, ¶ 35.g.ii; Parmet Decl. ¶ 6). That is, the code

at issue, only a miniscule part of the entire source code, serves *no purpose whatsoever* in

iConnect. Such a small overlap of nonfunctioning code does not establish substantial similarity

as a matter of law.

> ### 2. MTS cannot claim damages against MediZine for any alleged infringement of iConnect

Even if MTS were able to establish infringement of PSP by MediZine through its

use of iConnect, MTS would still have no claim for damages. Section 412 of the Copyright Act

bars a plaintiff from seeking statutory damages or attorney's fees when the plaintiff has failed to

file for registration within three months of publication or within one month of discovery of

infringement, whichever is earlier. 17 U.S.C. § 412. MTS did not register for protection of PSP

until June 22, 2009, as indicated by the effective date of registration. 17 U.S.C. § 410(d). (Exh.

A (Complaint, Exhs. B and C)). However, in their Certificate of Registration, MTS also

represents that the two versions of PSP for which registration was obtained were first published

in September 2003 and May 2006. *Id.* More three and six *years* passed between the publication

of PSP and the filing for a registration, which is clearly outside of the three *month* grace period

provided for in Section 412 of the Copyright Act. 17 U.S.C. § 412.[5]

Moreover, MTS is unable to establish any basis for actual damages based on any

alleged infringement. As the case law in the Second Circuit makes clear, it is the copyright

owner's burden to "proffer sufficient non-speculative evidence to support a causal relationship

---

[5] MTS is likewise precluded from claiming statutory damages or attorney fees because it failed to register within one month of the discovery of the alleged infringement. *See* 17 U.S.C. 412. According to the Complaint, MTS discovered Brandt working at his desk on May 13 and sent MediZine a cease and desist notice on May 21. Both of these are more than one month before the date that MTS filed for registration, June 22, 2009. (Exh. A, ¶¶ 10, 55).

between the infringement and the profits generated indirectly from such an infringement."
*Mackie v. Rieser*, 296 F.3d 909, 915-16 (9th Cir. 2002); *Bouchet v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 520-23 (4th Cir. 2003); *Bonner v. Dawson*, 404 F.3d 290, 294 (4th Cir. 2005); *On Davis v. The Gap, Inc.*, 246 F.3d 152, 159-60 (2d Cir. 2001) (upholding district court's denial of profits where plaintiff did nothing more than submit evidence of the Gap's gross revenues without showing a "reasonable relationship to the act of alleged infringement"). This non-speculative showing of causation applies to claims for both direct and indirect profits. *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 710-11 & n. 7 (9th Cir. 2004); *Mackie v. Rieser*, 296 F.3d at 914; *Andreas v. Volkswagen of America, Inc.*, 336 F.3d 789, 796 (8th Cir. 2003). Where, as is the case here, the allegedly copied text serves no purpose in the allegedly infringing software, and where the software functions in the same manner with or without the allegedly copied code, MTS will be unable to establish damages.

Finally, because the only potentially protectable similarity between iConnect and PSP is a piece of nonfunctioning code, MTS is unable to establish irreparable injury through the use of iConnect. The inability to demonstrate irreparable injury is fatal to MTS's claim for injunctive relieve. As stated by the Supreme Court when it addressed, and rejected, the use of any presumptions in particular cases, such as patent and copyright cases, when considering a preliminary injunction:

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  The Supreme Court has also

recently made the same point when it stated the requirements for a plaintiff seeking preliminary

injunctive relief:

> A plaintiff seeking a preliminary injunction must establish that he is likely to
> succeed on the merits, that he is likely to suffer irreparable harm in the absence
> of preliminary relief, that the balance of equities tips in his favor, and that an
> injunction is in the public interest.

*Winter v. Natural Resources Defense Council, Inc.*, 129 S.Ct. 365, 374 (2008).  In this instance,

any injunction on the allegedly copied piece of PSP will have no impact on the functioning of the

iConnect software and, as such, MTS cannot demonstrate that the use of this non-functioning

element is causing it harm.[6]

## II.  MTS'S LACK OF A COPYRIGHT REGISTRATION DEPRIVES THIS COURT OF JURISDICTION OVER MTS'S COUNT II INFRINGEMENT CLAIM REGARDING THE ICONNECT SOFTWARE.

In Count II of its Complaint, MTS alleges that it owns the copyright in the

iConnect software and that the Defendants have infringed MTS's copyright in iConnect

software. (Exh. A, ¶¶ 68-73).  MTS also acknowledges that it has never registered its alleged

copyright in iConnect.  (*Id.,* ¶ 70).

Section 411 of the Copyright Act provides that "[n]o civil action for infringement

of the copyright in any United States work shall be instituted until preregistration or registration

of the copyright claim has been made in accordance with this title."  17 U.S.C. § 411(a) (West

2009).  As a result, a federal court "is without jurisdiction over claims of infringement in

---

[6] Finally, as has been repeatedly stated to MTS's counsel and the Court, MediZine is no longer using the iConnect software and has agreed to an injunction barring any further use of it. (*See, e.g.,* Exh. C at 5:19-6:1).

unregistered works." *SimplexGrinnell LP v. Integrated Systems & Power, Inc.*, No. 07 Civ 2700, 2009 WL 2223692 *5 (S.D.N.Y. July 27, 2009) (citing *Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.*, 354 F.3d 112 (2d Cir. 2003)). Because the Copyright Act provides subject matter jurisdiction only over claims arising out of *registered* software, this Court lacks subject matter jurisdiction over Count II of MTS's complaint, in which it alleges infringement based on the iConnect software.

MTS has not registered, and does not contend that it has registered its claimed copyright in the iConnect computer program. As a result, this Court lacks subject matter jurisdiction for any claim under the Copyright Act for any alleged infringement of iConnect. *See, e.g., In re Literary Works in Elec. Databases Copyright Litig.*, 509 F.3d 116, 122 (2d Cir. 2007) ("[S]ection 411(a)'s registration requirement limits a district court's subject matter jurisdiction to claims arising from registered copyrights only."); *Well-Made Toy*, 354 F.3d at 115-16 (affirming dismissal based on lack of jurisdiction with respect to infringement claim for unregistered work where plaintiff argued that unregistered work was a derivative of registered software and therefore entitled to protection). Accordingly, MTS's claims alleging infringement of iConnect must be dismissed.

### III.   MTS'S COMPUTER FRAUD AND ABUSE ACT CLAIM AGAINST MEDIZINE FAILS AS A MATTER OF LAW

A court should grant a motion to dismiss under Rule 12(b)(6) when a complaint fails to plead facts sufficient "to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Whether or not a claim is "plausible" is context-specific and "requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). In making this determination, the court accepts the veracity of "well-pleaded factual allegations," but conclusory pleadings "are not entitled to

11

the presumption of truth." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a complaint fails to state a claim. *Id.*

        MTS attempts to state a claim under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a) ("CFAA"). The CFAA penalizes unauthorized access to protected computers with intent to defraud or cause damage. *Nexans Wires S.A. v. Sark-USA, Inc.* *("Nexans Wires II")*, 166 F. App'x 559 (2d Cir. 2006) (citing 18 U.S.C. § 1030(a)). However, the statute is primarily a criminal one, and the civil enforcement provision allows claims for "damage or loss" from conduct prohibited by the statute only if the plaintiff can satisfy certain factors. 18 U.S.C. § 1030(g); *see P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC,* 428 F.3d 504 (3d Cir. 2005). As a result, to establish a claim under the CFAA, a plaintiff must demonstrate a violation of one of the provisions of Section 1030(a)(1)-(7) and show that the violation involved one of the factors listed in § 1030(a)(5)(B). *See* 18 U.S.C. § 1030(g).

        In addition, "damage" under the CFAA is limited to "any impairment to the integrity or availability of data, a program, a system, or information," 18 U.S.C. § 1030(e)(8); *Nexans Wires II*, 166 F. App'x at 562 (collecting cases). As a result, claims for losses caused because of a loss of "competitive edge" are not cognizable under the CFAA if they are not caused by actual "computer impairment or computer damage." *Nexans Wires II*, 166 F. App'x at 562 (citing *Civic Ctr. Motors, Ltd. V. Mason Street Import Cars, Ltd.*, 387 F. Supp. 2d 378, 382 (S.D.N.Y. 2005)). Likewise, "loss" is defined by the CFAA to include cost to the victim to remedy damage, including "cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption

of service" 18 U.S.C. § 1030(e)(11);  loss does not include lost revenue because of increased

competition in the marketplace. *Nexans Wires II*, 166 F.App'x at 562-63 ("Because it is

undisputed that no interruption of service occurred in this case, L&K's asserted loss of $10

million is not a cognizable loss under the CFAA.").

  MTS has not identified which provision of § 1030(a) it alleges MTS has violated,

has not identified any "damage" as defined by the CFAA, and has not identified which factor

listed in § 1030(a)(5)(B) the undefined violation involved.  Despite this imprecise pleading, the

Court can nonetheless conclude that MTS has failed to state a claim as a matter of law.  The

provisions of Section 1030(a)(1)-(7) require that any alleged access by a defendant in violation

of the CFAA be done "without authorization" or "in excess of authorization."

  As to MediZine, MTS does not even allege that MediZine accessed its system, an

element of any claim of the CFAA.  18 U.S.C. § 1030(a); *LVRC Holdings LLC v. Brekka*, 581

F.3d 1127, 1132 (9th Cir. 2009) (requiring that a plaintiff show, among other factors, that a

defendant "intentionally accessed" a system to establish a violation under 18 U.S.C.

§ 1030(a)(2)).  MTS's CFAA claim instead focuses on the access that co-defendant Daniel

Brandt had to MTS's system.  But, based on MTS's own factual claims, not even Brandt's

conduct meets the pleading requirements of CFAA, let alone those of his alleged conspirators.

  According to MTS's repeated assertions, Brandt had broad access to confidential

and proprietary information related to MTS's lead generation platform as a part of his

responsibilities at MTS.  (Exh. A, ¶¶ 5, 35-39).  MTS asserts that "Brandt had access to

confidential information concerning all aspects of MTS's technology"; that Brandt was hired by

MTS "to design, architect and implement the second generation of MTS's online lead generation

platform"; that his responsibilities required that he "understand all of the then existing platform's

capabilities and desired future capabilities"; that he "drafted the requirements document and led

the development team in creating the . . . database structure"; and that he "managed the project

and developed portions of [PSP] himself." (*Id.*, ¶ 35). MTS also asserts that Brandt developed

the "user profiling system and the campaign targeting rules system, including creation of the

underlying PSP Software," (*id.*, ¶ 35), which appears to refer to MTS's ranking method, and that

he "continued to have regular access to MTS's trade secrets and other information" after the

design of the PSP software was complete (*id.*, ¶36).

      Given the broad access to the PSP software that Brandt had while an employee at

MTS, MTS's allegation that Brandt exceeded his authorized access when allegedly accessing

proprietary information fails as a matter of law. *E.g.*, *LVRC Holdings LLC v. Brekka*, 581 F.3d

1127, 1133 (9th Cir. 2009) ("[A] person who 'intentionally accesses a computer without

authorization' accesses a computer without any permission at all, while a person who 'exceeds

authorized access,' has permission to access the computer, but accesses information on the

computer that the person is not entitled to access.") *See also Jet One Group, Inc. v. Halcyon Jet

Holdings, Inc.*, No. 08-CV-3980 (JS), 2009 WL 2524864, *5 (E.D.N.Y. Aug. 14, 2009)

(rejecting a claim by plaintiff that exceeding authorization could apply to the misuse or

misappropriation of information that defendant was "freely given access to" and collecting cases

in support of its conclusion).[7]

---

[7] *But see, Calyon v. Mizuho Securities USA, Inc.*, No. 07 Civ. 2241 (RO), 2007 U.S. Dist. LEXIS 66051
(S.D.N.Y. Sept. 5, 2007). *Calyon* is in tension with the other cases cited above. *Calyon* itself recognized
that tension, and cited no case law to support its own interpretation. 2007 U.S. Dist. LEXIS 66051 at *3-
4. The cases collected in *Jet One* show that the vast majority of the case law rejects *Calyon*'s analysis.
2009 WL 2524864 at * 5 (citing *American Family Mut. Ins. Co. v. Hollander*, 08-CV-1039, 2009 WL
535990, *11 (N.D. Iowa Mar. 3, 2009); *Lasco Foods, Inc. v. Hall and Shaw Sales, Marketing &
Consulting, LLC*, 600 F. Supp. 2d 1045, 1053 (E.D. Mo. 2009); *Condux Intern., Inc. v. Haugum*, 08-CV-
4824, 2008 WL 5244818, *4 (D. Minn. Dec. 18, 2008); *Black & Decker (US), Inc. v. Smith*, 568 F. Supp.
2d 929, 933 (W.D. Tenn. 2008); *Shamrock Foods Co. v. Gast*, 535 F. Supp. 2d 962, 964 (D. Ariz. 2008);
*Diamond Power Int'l, Inc. v. Davidson*, 540 F. Supp. 2d 1322, 1341-43 (N.D. Ga. 2007); *B & B*

Despite repeatedly stressing the breadth of Brandt's access to MTS's software and proprietary information in their complaint, MTS nonetheless asserts that "Brandt exceeded his authorized access to MTS's computer system when he used MTS's computers and Internet connections and network" either "to transmit information to a person not entitled to receive it" or "in his capacity of an employee of eTruvian to provide services to MediZine." (Exh. A ¶¶ 111-12). But given MTS's unequivocal assertion that Brandt was in fact authorized to access all parts of their software that he allegedly misappropriated, MTS is unable to establish that Brandt **accessed** MTS's computer without authorization or in excess of his authority, and thus its claim must be dismissed. *E.g. LVRC Holdings LLC*, 2009 WL 2928952.

Not only do the pleadings not support MTS's claim regarding Brandt, they do not even attempt to describe how the other Defendants, including MediZine, conspired with him. As the Supreme Court has recently made clear, a Plaintiff's conclusory recitations of the elements of a cause of action are "disentitled" to a presumption of truth and do not suffice to establish the elements of a cause of action. *See Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 2009 U.S. LEXIS 3472, at *33 (May 18, 2009).

Here, MTS summarily recites conclusions of law without even attempting to support these conclusory allegations with factual support. For example, MTS states that Defendants "conspired with Brandt to intentionally exceed Brandt's authorized accessed [sic]," that this "conduct was intentional, knowing and engaged in with the intent to defraud," and that Defendants "knowingly caused the transmission of a program, information, code, or command."

---

*Microscopes v. Armogida*, 532 F. Supp. 2d 744, 758 (W.D. Pa. 2007); *Int'l Ass'n of Machinists & Aerospace Workers v. Werner-Masuda*, 390 F. Supp. 2d 479, 498-99 (D. Md. 2005); *SecureInfo Corp. v. Telos Corp.*, 387 F. Supp. 2d 593, 608-10 (E.D. Va. 2005); *In re America Online, Inc. Version 5.0 Software Litig.*, 168 F. Supp. 2d 1359, 1370-71 (S.D. Fla. 2001)).

(Exh. A, ¶¶ 113-115.)  But these "bare assertions" lack the supporting details, the "specific time, place, or person involved" to render a pleading plausible.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 565, 565 n.10, 566 (2007).  Where, as here, the pleadings "amount to nothing more than a 'formulaic recitation of the elements' of [the] claim," they do not suffice to establish a claim and must be dismissed.  *Iqbal,* 129 S. Ct. at 1951.

### IV.   THE REMAINDER OF MTS'S CLAIMS SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION

As demonstrated above, MTS's only asserted bases for federal jurisdiction against MediZine—its claims under the Copyright Act and the Computer Fraud & Abuse Act—lack merit as a matter of law and should be dismissed.  The remainder of the claims asserted against MediZine in this action are state law claims, specifically: Count III (Misappropriation of Trade Secrets and Confidential Information); Count IV (Unfair Competition); Count V (Unjust Enrichment); Count VI (Constructive Trust); Count X (Aiding and Abetting Breach of Fidciary Duty); Count XI (Tortious Interference With Contract And/Or Business Relations); Count XII (Permanent Injunction).

Under 28 U.S.C. § 1367(c)(3), "district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it had original jurisdiction...." 28 U.S.C. § 1367(c)(3).  Further, where, as here, "all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine--judicial economy, convenience, fairness, and comity--will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988).  Because MTS's federal law claims are without merit, MediZine requests dismissal of the state law claims in this instance.

V.    COSTS AND ATTORNEY'S FEES PURSUANT TO SECTION 505

Should the Court grant MediZine's motion, then as the prevailing party, MediZine

intends to apply to the Court for an award of costs and attorney's fees in accordance with Section

505 of the Copyright Act.  17 U.S.C. 505.

## CONCLUSION

For the foregoing reasons, this Court should grant MediZine's motions for

(1) summary judgment to MediZine as to MTS's claim of copyright infringement under

Fed.R.Civ.P. 56(b); (2) dismissal of Count VII of the Complaint alleging a violation of the

Computer Fraud & Abuse Act, 18 U.S.C. § 1030 (1), under Fed.R.Civ.P. 12(b)(6); and

(3) dismissal of the remainder of the case for lack of jurisdiction pursuant to 17 U.S.C. § 411(a).


November 3, 2009


By: _____
Philip R. Forlenza, Esq.
Gloria C. Phares, Esq.
Carrie A. Syme, Esq.
Krista D. Caner, Esq.

PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York  10036
(212) 336-2000 (telephone)
(212) 336-2222 (facsimile)
prforlenza@pbwt.com
gcphares@pbwt.com
casyme@pbwt.com
kcaner@pbwt.com

*Attorneys for Defendant MediZine LLC*


17