UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

| | | |
|---|---|---|
| MARKETING TECHNOLOGY SOLUTIONS, INC., | : | |
| | : | |
| | : | |
| | : | |
| Plaintiff, | : | No. 09 Civ. 8122 (LM) |
| | : | |
| - against - | : | FILED UNDER SEAL |
| | : | |
| MEDIZINE LLC, DANIEL BRANDT, MICHAEL ROWSOM, and ETRUVIAN, INC. | : | |
| | : | |
| Defendants. | : | |

------------------------------------------------------------x

**PLAINTIFF MTS' MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT MEDIZINE'S MOTION FOR
SUMMARY JUDGMENT AND MOTION TO DISMISS**


WILMER CUTLER PICKERING
 HALE AND DORR LLP
399 Park Avenue
New York, New York 10022



Of Counsel:
Mark Matuschak
Jonathan Rosenfeld
Vinita Ferrera
Dyan Finguerra-DuCharme

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................ 1

STATEMENT OF FACTS ................................................................................... 2

I.   MTS's PSP Software ............................................................................ 2

II.  Brandt's Employment With MTS and Access to Confidential Information...................... 2

III. The Defendants' Copying and Unauthorized Use of MTS's Software ............................ 3

IV.  Critical Elements of the PSP Platform Were Copied in iConnect ..................................... 5

ARGUMENT ..................................................................................................... 6

I.   Medizine's Motion for Summary Judgment on Count I Should be Denied ...................... 6

A.  There Are Disputed Factual Issues Regarding Whether iConnect is Substantially Similar
    To PSP ............................................................................................... 7

    1.  Defendants' Literal Copying of the Engine.js File from PSP into iConnect Creates
        Genuine Issues of Material Fact.............................................................. 7

    2.  Defendants' Non-Literal Copying of the Campaign Ranking Code Creates Genuine
        Issues of Material Fact ...................................................................... 10

B.  The Court Need not Decide Whether the New Medizine Software ("NMS") Infringes
    MTS's Copyright.................................................................................. 12

C.  There are Genuine Issues of Material Fact Concerning Whether MTS is Entitled to
    Damages for Infringement of PSP.............................................................. 13

D.  There are Genuine Issues of Material Fact Concerning Whether MTS is Entitled to a
    Permanent Injunction for Infringement of PSP ............................................. 14

II.  Medizine's Motion for Summary Judgment on Count II Should be Denied.................... 15

III. Medizine's Motion to Dismiss Count VII Should be Denied.......................................... 17

A.  Elements Of A Claim Under The Computer Fraud And Abuse Act .............................. 18

B.  MTS's Complaint Sufficiently Alleges That Brandt Violated The Computer Fraud And
    Abuse Act .......................................................................................... 19

    1.  The CFAA Contemplates That Individuals Authorized To Access A Company's
        Computers May Nevertheless Be Liable ................................................. 21

i

2.   Congress Intended To Reach Corporate Insiders  Who Misuse Their Access To Computers ........................................................................................................... 21

3.   MTS's Complaint Adequately Alleges That Brandt Accessed MTS Computers In Excess Of Authorization ...................................................................................... 23

4.   MTS's Complaint Sufficiently Alleges That It Suffered A "Loss" Under The CFAA 24

IV.  Dismissal of the Federal Counts Against Medizine Would not Affect This Court's Supplemental Jurisdiction ................................................................................................ 25

CONCLUSION ........................................................................................................................ 26

# TABLE OF AUTHORITIES

## Federal Cases

*ABKCO Music, Inc. v. Stellar Records, Inc.*,
  96 F.3d 60 (2d Cir. 1996) .......................................................... 14

*Apple Computer, Inc. v Formula International Inc.*,
  562 F. Supp. 775 (C.D. Cal. 1983) .......................................................... 12

*Brady v. Town of Colchester*,
  863 F.2d 205 (2d Cir. 1988).......................................................... 7

*Calyon v. Mizuho Securities USA, Inc.*,
  No. 07 Civ. 2241, 2007 WL 26186581 (S.D.N.Y. Sept. 5, 2007) ..................................... 19, 23

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986).......................................................... 6

*Charles Schwab & Co., Inc. v. Carter*,
  No. 04 C 7071, 2005 WL 2369815 (N.D. Ill. Sept. 27, 2005)................................. 17

*Cole v. Fischer*,
  No. 08-CV-699, 2009 WL 2258341 (W.D.N.Y. July 29, 2009) ................................. 1

*Computer Associates International, Inc. v. Altai*,
  982 F.2d 693 (2d Cir. 1992).......................................................... 7, 8, 10, 11

*Continental Group, Inc. v. KW Property Management, LLC*,
  622 F. Supp. 2d 1357 (S.D. Fla. 2009) .......................................................... 20

*Davis v. Gap, Inc.*,
  246 F.3d 152 (2d Cir. 2001).......................................................... 14

*Diamond Power International, Inc. v. Davidson*,
  540 F. Supp. 2d 1322 (N.D. Ga. 2007) .......................................................... 20

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006).......................................................... 14

*EF Cultural Travel BV v. Explorica, Inc.*,
  274 F.3d 577 (1st Cir. 2001).......................................................... 19, 23

*Ervin & Smith Advertising & Public Relations, Inc. v. Ervin*,
  No. 8:08cv459, 2009 U.S. Dist. LEXIS 8096 (D. Neb. Feb. 3, 2009) ..................................... 20

*eScholar, LLC v. Otis Educational Systems, Inc.*,
  No. 04 Civ. 4051, 2005 WL 2977569 (S.D.N.Y. Nov. 3, 2005) ................................. 7

*Gates Rubber Co. v. Bando Chemical Industries, Ltd*,
    9 F.3d 823 (10th Cir. 1993) ........................................................................................ 10

*Harper & Row Publishers, Inc. v. Nation Enterprises*,
    471 U.S. 539 (1985) ........................................................................................... 8, 9

*Hewlett-Packard Co. v. Byd:Sign, Inc.*,
    No. 6:05-CV-456, 2007 WL 275476 (E.D. Tex. Jan. 25, 2007) .............................. 20

*In re Literary Works in Electronic Databases Copyright Litigation*,
    509 F.3d 116 (2d. Cir. 2007) ...................................................................................... 16

*International Airport Centers, LLC v. Citrin*,
    440 F.3d 418 (7th Cir. 2006) ......................................................................... 19, 20, 21

*Jamison Business Systems, Inc. v  Unique Software Support Corp.*,
    No. CV 02-4887, 2005 WL 1262095 (E.D.N.Y. May 26, 2005) ............................. 8

*Jet One Group, Inc. v. Halcyon Jet Holdings, Inc.*,
    No. 08-CV-3980, 2009 WL 2524864 (E.D.N.Y. Aug. 14, 2009) ........................... 20

*Johnson v. City of New York*,
    No. 08 Civ. 5277, 2009 WL 3786594 (S.D.N.Y. Nov. 12, 2009) .......................... 25

*Lasco Foods, Inc. v. Hall and Shaw Sales, Marketing, & Consulting, LLC*,
    600 F. Supp. 2d 1045 (E.D. Mo. 2009) ....................................................................... 20

*Lasco Foods, Inc. v. Hall and Shaw Sales, Marketing, & Consulting, LLC*,
    No. 4:08 CV 01683, 2009 WL 3523986 (E.D. Mo. Oct. 26, 2009) ........................ 21

*LVRC Holdings LLC v. Brekka*,
    581 F.3d 1127 (9th Cir. 2009) ................................................................................. 19

*MGB Homes, Inc. v. Ameron Homes, Inc.*,
    903 F.2d 1486 (11th Cir. 1990) ............................................................................... 16

*Mitel, Inc. v Iqtel, Inc.*,
    124 F.3d 1366, 1372 (10th Cir. 1997) ...................................................................... 16

*Modis, Inc. v. Bardelli*,
    531 F. Supp. 2d 314 (D. Conn. 2008) ..................................................... 18, 19, 23

*Nexans Wires S.A. v. Sark-USA, Inc.*,
    319 F. Supp. 2d 468 (S.D.N.Y. 2004),
    *aff'd* 166 F. App'x 559 (2d Cir. 2006) ..................................................................... 24

*Nihon Keizai Shimbun, Inc. v. Comline Business Data, Inc.*,
    166 F.3d 65 (2d Cir. 1999) ....................................................................................... 8

*Nilfisk-Advance, Inc. v. Mitchell*,
  No. 05-5179, 2006 U.S. Dist. LEXIS 21993 (W.D. Ark. Mar. 28, 2006) ............................... 20

*Nixon v. Freeman*,
  670 F.2d 346 (D.C. Cir. 1982) ...................................................................................... 2

*O.P. Solutions, Inc. v. Intellectual Prop. Network, Ltd.*,
  1999 U.S. Dist. LEXIS 979 (S.D.N.Y. Feb. 1, 1999) .............................................. 11

*P.C. of Yonkers, Inc. v. Celebrations! the Party & Seasonal Superstore, L.L.C.*,
  No. 04-4554, 2007 WL 708978 (D.N.J. Mar. 2, 2007),
  *aff'd* 428 F.3d 504 (3d Cir. 2005) ........................................................................ 24

*Pearson Education, Inc. v. Nugroho*,
  No. 08 Civ. 8034, 2009 WL 3429610 (S.D.N.Y. Oct. 27, 2009) ............................ 14

*Personalized Brokerage Services, LLC v. Lucius*,
  No. 05-1663, 2006 U.S. Dist. LEXIS 36176 (D. Minn. Jan. 25, 2006).................... 20

*Positive Black Talk, Inc. v. Cash Money Records, Inc.*,
  394 F.3d 357 (5th Cir. 2004) .................................................................................. 16

*Reed Elsevier, Inc. v. Muchnick*,
  129 S. Ct. 1523 (2009).............................................................................................. 16

*Resource Center for Independent Living, Inc. v. Ability Resources, Inc.*,
  534 F. Supp. 2d 1204 (D. Kan. 2008).................................................................... 20

*Shapiro v. Cantor*,
  123 F.3d 717 (2d Cir. 1997)...................................................................................... 17

*Silverstein v. Penguin Putnam, Inc.*,
  368 F.3d 77 (2d Cir. 2004)........................................................................................ 15

*Thoroughbred Software International  v. Dice Corp.*,
  488 F.3d 352 (6th Cir. 2007) .................................................................................. 14

*Torah Soft Ltd. v. Drosnin*,
  136 F. Supp. 2d  276 (S.D.N.Y. 2001)...................................................................... 11

*United States v. Salum*,
  257 F. App'x 225 (11th Cir. 2007) .......................................................................... 19

*Warner Brothers Entertainment Inc. v. RDR Books*,
  575 F. Supp. 2d 513 (S.D.N.Y. 2008)...................................................................... 14

*Williams v. Broadus*,
  No. 99 Civ. 10957, 2001 WL 984714 (S.D.N.Y. Aug. 27, 2001) ............................ 8

**Federal Statutes**

17 U.S.C. § 504 ................................................................................................. 14

18 U.S.C. § 1030 ................................................................................... 2, 3, 4, 6

28 U.S.C. § 1367 ............................................................................................... 25

Identity Theft Enforcement & Restitution Act of 2008,                        Pub.
    L. No. 110-326, 122 Stat. 3560 (Sept. 26, 2008) ..................................... 24

Counterfeit Access Device and Computer Fraud and Abuse Act,
    Pub. L. No. 98-473, 98 Stat. 2190-91 (Oct. 12, 1984) ............................. 21

**Legislative History**

H. Rep. 99-612, 99th Cong., 2nd Sess. (May 22, 1986) .................................. 22

S. Rep. No. 101-544, 101st Cong., 2d Sess., 1990 WL 201793 (Oct. 19, 1990) ........................ 22

**Other Authorities**

16 Moore's Federal Practice § 106.66 (Matthew Bender 3d ed.) ................................. 25

Plaintiff Marketing Technology Solutions, Inc. ("MTS") submits this memorandum of law in opposition to Defendant Medizine LLC's ("Medizine") motion for summary judgment and motion to dismiss.  For the following reasons, Medizine's motion should be denied.

## PRELIMINARY STATEMENT

MTS has asserted two claims for copyright infringement:  one based on the Defendants' unauthorized copying and use of MTS's proprietary PSP platform to create iConnect, a derivative work; and one based on Defendants' unauthorized copying and use of the iConnect platform itself, which MTS owns by virtue of the "work for hire" provisions of Defendant Daniel Brandt's ("Brandt") employment contract.

It is undisputed that, as of September 22, 2009, when MTS filed this action, Medizine was using the iConnect platform, and that it continued to use the iConnect platform in its entirety through September 30, 2009.  Therefore, MTS's Complaint justifiably sought both preliminary and permanent injunctive relief and damages as a result of such unauthorized copying and use. In a tacit acknowledgment of its prior infringement, it appears today that Medizine has stopped using most (although not all) portions of the iConnect platform such that a preliminary injunction may no longer be necessary; however, MTS still has a viable claim for damages and a permanent injunction based on Medizine's past conduct.

Medizine's premature attempt to dispose of MTS's copyright claim in its entirety should be rejected because MTS has not had an opportunity to conduct the discovery needed to determine the nature and scope of the Defendants' prior use of either the PSP source code or the iConnect source code, let alone the financial benefit they obtained (or conversely, that MTS was deprived of) from such use.  *See Cole v. Fischer*, No. 08-CV-699, 2009 WL 2258341, at *2 (W.D.N.Y. July 29, 2009) ("[C]ourts should ordinarily afford the opponent a reasonable

opportunity to conduct discovery before entertaining [a summary judgment] motion."); *Nixon v. Freeman*, 670 F.2d 346, 362 (D.C. Cir. 1982) ("[D]ecision by summary judgment is disfavored when additional development of facts might illuminate the issues of law requiring decision.").

The parties have not engaged in any discovery with respect to Medizine apart from a review of communications between Brandt and Medizine and preliminary expert discovery focused on the narrow issues of whether Medizine continued to run the iConnect software after representing that it had been shut down, and whether the so-called "New Medizine Software" infringed MTS's copyrights. Accordingly, the parties have not had an opportunity to address fully the numerous fact issues that remain disputed.

Likewise, MTS's claim under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, should proceed because MTS has adequately pled the requisite elements.

STATEMENT OF FACTS

## I.     MTS's PSP Software

Since 2001, MTS has utilized an online lead generation platform to assist its clients in connecting their brands with health-conscious consumers. (*See* Declaration of Robert Rebak, Nov. 19, 2009, submitted herewith ("Rebak Decl.") at ¶¶ 2-3.) MTS provides these services through its highly specialized and proprietary software called the Promotion Serving Platform software ("PSP Software"). (*Id.* ¶ 7.) The PSP Software was developed by and exclusively for MTS. (*Id.* ¶ 6.) MTS is the owner of U.S. Registration Nos. TX 6-938-819 and TX 6-938-643, relating to the PSP Software. (*Id.* ¶ 7 & Ex. 1.)

## II.    Brandt's Employment With MTS and Access to Confidential Information

On or about December 16, 2002, MTS hired Daniel Brandt as Senior Director of Advanced Technology. (Rebak Decl., ¶ 12.) Brandt later became Vice President of Technology, and most recently served as Vice President of Operations. (*Id.*) When he joined MTS, Brandt

2

signed an Employment Agreement.  (*Id.* ¶ 13 & Ex. 3.)  Paragraph 3 of the Employment Agreement includes detailed confidentiality provisions relating to the use or disclosure of MTS's proprietary information.  (*Id.*)  That provision specifically prohibited Brandt from "us[ing]" or "exploit[ing]" MTS "computer software" and "source code" "other than for the benefit of MTS". (*Id.*)  In addition, while he was employed at MTS, Brandt received a copy of MTS's Employee Handbook that further described the duty to protect confidential business information and not disclose it.  (*Id.* ¶ 17 & Ex. 4.)

In his various roles at MTS, Brandt was integrally involved in the design, architecture, implementation, optimization, and maintenance of MTS's proprietary online lead generation technology, and, as a result, was uniquely knowledgeable about all aspects of that technology. (*Id.* ¶ 18.)  Indeed, Brandt was the chief architect of the PSP software.  (*Id.* ¶ 19.)

## III.  The Defendants' Copying and Unauthorized Use of MTS's Software

Unbeknownst to MTS at the time, in 2007, Brandt began to conspire with Michael Rowsom, Medizine's Senior Vice President (who had served as MTS's Senior Vice President of Online Marketing until September 2006), to develop a competing online lead generation platform, called "iConnect."

Brandt and Rowsom, through a side company called eTruvian, supplied the iConnect software to Medizine, and assisted Medizine in launching and maintaining its online lead generation program via the <remedylife.com> website, all while Brandt continued to work for MTS.  (Declaration of Daniel Murphy in Support of MTS's Motion for Preliminary Injunction ("Murphy Decl."), Dkt. No. 6, at ¶ 4.)  Brandt, through eTruvian, also agreed to provide Medizine telephone or instant messaging technical support between normal business hours of 9 a.m. and 5 p.m., Monday through Friday.  (*Id.*, ¶ 3.2 & Schedule B.)

3

This scheme lasted for approximately two years, until May 13, 2009, when an MTS senior executive caught Brandt, at his desk at MTS, working on a development version of the online software platform supporting Medizine's <remedylife.com> website.  (Murphy Decl., ¶ 3.)  When confronted, Brandt admitted that he had been working for Medizine to develop their online software, and that he had been providing related services to Medizine for approximately 1½ years.  (*Id.* ¶ 4.)  He further admitted that he had worked with Michael Rowsom, a former MTS officer, to develop Medizine's online software.  (*Id.*)  MTS terminated Brandt for cause shortly thereafter.  (Rebak Decl. ¶ 28.)

Promptly after learning of Brandt's collaboration with Rowsom, eTruvian, and Medizine, on May 21, 2009, MTS wrote to Medizine and requested that it cease and desist from using all technology, intellectual property, and other materials developed by, or derived from work done by, Brandt, Mr. Rowsom, eTruvian, and/or MTS.  (*Id.* ¶ 31.)  After receiving the demand letter, Medizine supposedly engaged MG LLC d/b/a Tranzact to develop lead generation software to replace iConnect.  (*See* Declaration of Traver Hutchins, Oct. 7, 2009, ("Hutchins Decl."), ¶¶ 5-6, attached as Ex. 1 to Nov. 19, 2009 Declaration of Dyan Finguerra-DuCharme, filed herwith ("Figuerra Decl."); Declaration of Jonathan Washburn, Oct. 7, 2009 ("Washburn Decl."), Medizine Ex. D, ¶¶ 3-4.)  Although Medizine states that it "did not provide Tranzact with any access to iConnect," (Hutchins Decl. ¶ 6), the limited document discovery to date reflects that Tranzact had substantial contact with  Brandt and, therefore, had ample access to information about iConnect.  (Finguerra Decl. Exs. 2-3 [emails between Brandt and Tranzact].)  By June 2009, Tranzact already understood iConnect so well that it was able to reproduce it without receiving "*any* specific written requirements" from Medizine.  (Washburn Decl. ¶ 5 (emphasis

added).)[1]   While Tranzact labored to replicate iConnect, Medizine continued to run its lead generation business on the iConnect platform.  Not until October 1, 2009, 134 days after MTS sent the demand letter and nine days *after* MTS filed this lawsuit, did Medizine purportedly discontinue its unauthorized use of iConnect.  (*See* Declaration of Michael Cunnion, Oct. 30, 2009, Dkt. No. 44, ¶ 3.)   Discovery has shown that Medizine continues to use aspects of iConnect even today.   (Declaration of Dr. Benjamin Goldberg, Nov. 19, 2009, submitted herewith ("Goldberg Decl."), ¶ 12-13.)

**IV.     Critical Elements of the PSP Platform Were Copied in iConnect**

Expedited discovery of the iConnect source code has revealed that there are substantial elements of the iConnect software that are copied, either literally or non-literally, from MTS's copyrighted PSP software.   In particular, expert analysis by MTS's technical expert, Dr. Goldberg, has identified at least two elements of the iConnect software that are virtually identical to the corresponding elements in the PSP software:  (1) the engine.js file; and (2) the Campaign Ranking Code.   (*See* Expert Report of Dr. Benjamin Goldberg, MediZine Ex. L ("Goldberg Report"), ¶¶ 22-24.)

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████   *Medizine concedes that 432 out of 435 lines of code in the iConnect version of engine.js appear in the PSP version of the same file.*  (SJ Mot. at 4).  Moreover, as Dr. Goldberg explains, the engine.js file provides important functionality in the PSP platform.  (*See* Goldberg

---

[1] ████████████████████████████████████████████████████

████████████████████████████████

Report ¶ 22.  In addition, the engine.js file can serve an important purpose as a reference or development tool.  (Costanzo Decl. at ¶¶ 9-10.)

With respect to the Campaign Ranking Code, that code determines the order in which "Campaigns" (advertisements) are displayed to visitors to the MTS website.  (Goldberg Report ¶ 24.) ███████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████  As Dr. Goldberg explained, the campaign ranking function could be expressed in many different ways:



*Id.* ¶ 28 (emphasis added); *see also* Costanzo Decl. ¶ 6 (describing different possibilities for calculating campaign rank in advertising business).  MTS's innovation, based on its accumulated experience in the advertising and lead generation business, was thus "highly unlikely" to emerge at another company acting independently.  (*See* Goldberg Report ¶¶ 24, 28, 38.)  Finally, Dr. Goldberg's analysis confirms that the iConnect version of this code is "essentially the same" as the version in PSP.  ( *Id.* ¶ 28.)  Both versions of the code select the same elements of data and process them in the same manner.  (*Id.* ¶¶ 25-26.)

## ARGUMENT

**I.     Medizine's Motion for Summary Judgment on Count I Should be Denied**

On a motion for summary judgment, the burden of showing that no genuine factual dispute exists rests on Medizine.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If there is ***any*** evidence in the record from which a jury could draw a reasonable inference in favor of MTS on a material fact, summary judgment is improper.  *See Brady v. Town of Colchester*,

863 F.2d 205, 211 (2d Cir. 1988); *eScholar, LLC v. Otis Educ. Sys., Inc.*, No. 04 Civ. 4051, 2005 WL 2977569, at *7 (S.D.N.Y. Nov. 3, 2005).  Such is the case here.

> **A.    There Are Disputed Factual Issues Regarding Whether iConnect is Substantially Similar To PSP**

In the Second Circuit, MTS can establish copyright infringement by showing (1) actual copying of its PSP software or (2) that Medizine, through its agent Brandt, had access to MTS' software and there is probative similarity between Medizine's iConnect software and MTS' PSP software.  *Computer Assocs. Int'l., Inc. v. Altai, Inc.*, 982 F.2d 693, 701 (2d Cir. 1992).

As an initial matter, Medizine does not appear to dispute that the iConnect platform copies or makes use of certain portions of the PSP platform, including the "engine.js" file and the Campaign Ranking Code.  Instead, Medizine contends that MTS cannot prevail on its claim for copyright infringement with respect to the PSP platform because there is insufficient evidence of substantial similarity between the PSP platform and the iConnect platform.  However, even based on the limited discovery obtained, it is clear that there are genuine issues of material fact as to whether Defendants' unauthorized use and copying of literal and non-literal elements of the PSP platform was "substantial," precluding entry of summary judgment at this time.

> 1.    *Defendants' Literal Copying of the Engine.js File from PSP into iConnect Creates Genuine Issues of Material Fact*

Medizine does not dispute that the "engine.js" file -- source code in iConnect -- was ***literally copied*** from MTS's copyrighted PSP software.  ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████    Medizine concedes that 432 out of 435 lines of code in the iConnect version of engine.js appear in the PSP version of the same file.  (SJ Mot. at 4).  In other words, several hundred lines of code – amounting to ***over 98 percent*** of the iConnect version of engine.js – were literally copied out of PSP.

Instead, Medizine argues that: (1) the number of lines of code in engine.js is too small to establish substantial similarity; and (2) the engine.js file is not functional in iConnect, and therefore is irrelevant to determining whether PSP and iConnect are substantially similar. (SJ Mot. at 7-8.)  However, both of these arguments raise disputed factual issues which cannot be resolved by  summary judgment.

The case law is clear that substantial similarity cannot be determined based on quantity alone.  MTS has not cited any case in which literal, wholesale copying of *source code* was deemed "de minimis" as a matter of law.  "Courts have not accepted a *de minimis* defense where there is evidence the defendant copied a program's source code, as opposed to other elements." *Jamison Bus. Sys, Inc. v  Unique Software Support Corp*, No. CV 02-4887, 2005 WL 1262095 (E.D.N.Y. May 26, 2005).

Rather, it is well-established that, in assessing substantial similarity, it is necessary to consider the importance of the code, not merely its quantity.  "Even if it is relatively small, the portion of the pre-existing work may be substantial if it is of great qualitative importance to the [pre-existing] work as a whole." *Williams v. Broadus*, No. 99 Civ. 10957, 2001 WL 984714, at *3 (S.D.N.Y. Aug. 27, 2001) (quotation marks and citation omitted); *see also Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.*, 166 F.3d 65, 70 (2d Cir. 1999) ("The appropriate inquiry is whether 'the copying is quantitatively and qualitatively sufficient' to support a finding of infringement.") (citation omitted).  Indeed, the Supreme Court has confirmed that copying 300 words in scattered verbatim quotations from a 200,000 word book was substantial.  *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 566 (1985).  Significantly, the substantial similarity inquiry focuses on the importance of the copied file to the *pre-existing* work, not the infringing work.  *Altai*, 982 F.2d at 711 ("the court's substantial similarity inquiry focuses on…

8

an assessment of the copied portion's relative importance with respect to the plaintiff's overall program"); *Harper & Row Publishers*, 471 U.S. at 565 ("a taking may not be excused merely because it is insubstantial with respect to the infringing work").

The relative importance of engine.js file to the PSP software is at least a disputed issue of fact. MTS's expert has opined that engine.js "drives much of the user interface when a user is answering survey questions concerning health and medication issues." ████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████ The testimony of both parties' experts therefore supports the inference that engine.js is an important component of the PSP software.

Finally, there are disputed issues of material fact with respect to Medizine's assertion that engine.js is "nonfunctioning" in iConnect. First, whether or not the engine.js file is functioning now, MTS has had insufficient opportunity to explore whether or not that file was functioning in the past, and therefore to test Medizine's factual assertion that engine.js has never performed any function in the iConnect software.[2] Moreover, the factual record developed thus far supports the inference that Defendant has derived substantial benefits from copying engine.js – and hence that it was an important component of the infringing work – even if it was never made functional. For example, the file can be used as a reference or development tool. (Costanzo Decl. ¶¶ 9-10.) Indeed, the very fact that Defendants chose to copy the engine.js file and maintain it on its servers suggests that it is qualitatively important.

---

[2]     Indeed, there is ample reason to doubt Medizine's assurances. On October 7, 2009, Medizine submitted a Declaration stating that "[a]s of midnight September 30, 2009, Medizine ceased using iConnect for any purpose…." (Hutchins Decl. ¶ 8.) But MTS's expert discovered that, contrary to this representation, Medizine continued to maintain a website that ran iConnect code as of October 26, 2009. (Goldberg Report ¶¶ 40-44).) Medizine subsequently acknowledged that "remnants" of iConnect had indeed remained publicly accessible, but represented that they had been taken down. (Cunnion Dec. ¶ 14.) However, MTS's expert has determined that Medizine continues to operate portions of iConnect even today. (Goldberg Decl. ¶¶ 12-13.)

2.     *Defendants' Non-Literal Copying of the Campaign Ranking Code Creates Genuine Issues of Material Fact*

Medizine's motion should be denied for the additional reason that MTS's expert identified substantial ***non-literal*** copying from PSP into iConnect.  Specifically, Dr. Goldberg opined that the Campaign Ranking Code in iConnect – the code that determines the order in which campaigns are displayed to the user  – is "essentially the same" as the version in PSP. (Goldberg Report ¶¶ 24-28.)

Medizine does not dispute the substantial similarity between the Campaign Ranking Code in the PSP platform and the iConnect platform.  Instead, Medizine's ***sole*** theory of noninfringement is that the Campaign Ranking Code is exempted from copyright protection under Section 102(b) of the Copyright Act because, according to Medizine, it is "undisputed" that the Code is "simply a process or a method of operation." (SJ Mot. 5-6.)  In fact, MTS disputes both the legal and factual proposition underlying Medizine's argument.

Contrary to Medizine's argument, "***a method of operation may contain expression that is copyrightable***."  *eScholar, LLC v. Otis Educ. Sys.*, 2005 WL 2977569, at *20 (S.D.N.Y. Nov. 3, 2005) (emphasis added) (citations omitted); *see also Mitel, Inc. v Iqtel, Inc.*, 124 F.3d 1366, 1372 (10th Cir. 1997) ("although an element of a work may be characterized as a method of operation, that element may nevertheless contain expression that is eligible for copyright protection."); *Gates Rubber Co. v. Bando Chem. Indus., Ltd*, 9 F.3d 823, 844 (10th Cir. 1993) (the term "algorithm" may refer to processes or expressions, depending on context). ████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

In order to determine whether a method of operation contains copyrightable expression, the Southern District of New York has applied the test set forth in the Second Circuit's decision in *Computer Associates International v. Altai, Inc.*, 982 F.2d 693 (2d Cir. 1992).   *See Harbor Software, Inc. v. Applied Sys., Inc.*, 925 F. Supp. 1042, 1048 (S.D.N.Y. 1996) (utilizing *Altai* factors to determine whether process was protectable).   Under this test, the Court considers whether copied expression was (a) dictated by external factors; (b) taken from the public domain; or (c) merely "incidental to the idea being expressed."  *Id.* at 703-10.  If the expression falls into one of these categories, it is not protectable.  Medizine does not argue that the Campaign Ranking Code was taken from the public domain, or that its design was dictated by factors external to the program itself, and the MTS declaration filed herewith confirms that neither of these factors applies.  (Costanzo Decl. ¶ 3-5.)  Thus, the only *Altai* factor at issue is the third.

Dr. Goldberg's report establishes that the copied expression was not merely "incidental to the idea being expressed."  *Altai*, 982 F.2d at 707-09.  Expression is incidental to an idea when "there is essentially only one way to express an idea," in which case the idea and the process are said to have "merged."  *Id.* at 707-08.  In contrast, where an idea or process can be expressed in many ways, there is no merger and the expression may be protectable.  As Dr. Goldberg explains, the idea of ranking campaigns could have been expressed in many ways:  ██████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

(*See* Goldberg Report ¶¶ 27-28; see also Costanzo Decl. ¶ 6)  This testimony at the very least

raises a material issue of fact concerning whether the Campaign Ranking Code contains copyrightable expression, particularly given that Medizine's expert offered no opinion concerning the Campaign Ranking Code.

None of the cases Medizine cites support its theory that Campaign Ranking Code is unprotectable as a matter of law merely because it contains a method of operation. For example, the Campaign Ranking Code is not a simple search algorithm governed primarily by efficiency concerns, such as the algorithm at issue in *Torah*. *Torah Soft Ltd. v. Drosnin*, 136 F. Supp. 2d 276, 291-92 (S.D.N.Y. 2001). And unlike the plaintiff in *O.P. Solutions*, MTS does not seek protection for a function that can only be expressed in a few ways. *O.P. Solutions, Inc. v. Intellectual Prop. Network, Ltd.*, No. 96 Civ. 7952, 1999 U.S. Dist. LEXIS 979, at *16-17 (S.D.N.Y. Feb. 1, 1999). Rather, MTS seeks to protect the particular way in which it has chosen to express a "function" – ranking campaigns – that can be expressed in a multitude of ways. *See Apple Computer, Inc. v Formula Int'l Inc.*, 562 F. Supp. 775, 783 (C.D. Cal. 1983) ("Apple seeks here not to protect ideas (i.e. making the machine perform particular functions) but rather to protect their particular expressions").

For these reasons, Dr. Goldberg's reports and the Declarations submitted herewith demonstrate that the copied expression in the PSP Campaign Ranking Code is not excluded by any of the *Altai* factors, and is therefore protectable under the copyright laws. At a minimum, this evidence raises a genuine issue of material fact precluding summary judgment. *See eScholar*, 2005 WL 2977569, at *7 (whether copied material was idea or expression was disputed question of fact).

## B. The Court Need not Decide Whether the New Medizine Software ("NMS") Infringes MTS's Copyright

Medizine has moved for summary judgment on the additional ground that NMS does not

infringe PSP. (SJ Mot. at 5.) The Court need not address this issue because the allegation that NMS infringes PSP is not part of this case. At the time MTS filed its Complaint in September, Medizine was not using NMS, and, not surprisingly therefore, NMS is not mentioned anywhere in the Complaint. (SJ Mot. at 2 ("Medizine began using [NMS] on October 1, 2009.") Under Rule 56(b), "a party against whom relief is sought may move… for summary judgment on all or part of the *claim*." (emphasis added.) Here there is no "claim" that NMS infringes. Hence the Court need not decide the issue.[3]

### C.   There are Genuine Issues of Material Fact Concerning Whether MTS is Entitled to Damages for Infringement of PSP

Medizine's contention that MTS is not entitled to damages for its copying of PSP ignores the factual disputes regarding the substantial similarity between the PSP platform and the iConnect platform. As an initial matter, Medizine's argument relies on its assertion that engine.js "serves no purpose" in iConnect. (SJ Mot. at 8.) Medizine ignores the fact that engine.js is not the only element of PSP that was copied. The Campaign Ranking Code was also copied. Dr. Goldberg has opined (and Medizine has not disputed) that this Code "is one of the most important aspects of the PSP platform." (Goldberg Report ¶ 27.) MTS is certainly entitled to discovery to determine the extent of damages attributable to Defendants' copying and use of PSP's Campaign Ranking Code prior to September 30, 2009.

Even as to the engine.js file, as set forth above, there is a material factual dispute requiring additional discovery concerning whether Defendants used the engine.js file at any time while they were running iConnect or as a reference during development. Indeed, the simple fact

---

[3]      The issue of whether NMS infringes arose in the context of MTS's motion for an order preliminarily enjoining Medizine from using iConnect. In response to MTS's motion, Medizine represented that it was no longer using iConnect, and was using NMS instead. (*See* MTS Mot. for PI, Dkt. No. 4; *see also* Medizine Ex. C, 10/1/09 Hr'g, at 13:6-9 ("it was at midnight last night that we stopped, coincidentally, using I-Connect….")) Thus, the issue was whether Medizine was nevertheless continuing to infringe either PSP or iConnect with its new platform, such that a preliminary injunction might still be in order. However, since MTS's Preliminary Injunction has been withdrawn, the NMS software is no longer at issue. (*See* 11/16/09 Notice of Withdrawal, Dkt. No. 51.)

that Defendants copied engine.js and kept it strongly suggests that they intended to use it in this manner.  Having a copied version of engine.js available for reference, on its own servers, would have saved Medizine the time and expense of developing its own user interface from scratch. (Goldberg Decl. ¶ 9; Costanzo Decl. ¶ 9-10.)   MTS is entitled to recover Medizine's profits attributable to any such use.  Thus, there is a genuine factual dispute concerning MTS's entitlement to damages for Medizine's profits from its copying of engine.js.  At a minimum, MTS should be permitted to take discovery to confirm whether or not Defendants made any use of the engine.js file in the past (either by running it or for reference purposes) and to quantify the benefit to Defendants from such use prior to September 30, 2009.

Additionally, even if discovery were to show that the Defendants have never actually run the engine.js file in iConnect, MTS may nevertheless be entitled to damages.  Even if the infringer does not actually use the infringing software, the copyright owner is entitled to recover a "reasonable license fee on which a willing buyer and a willing seller *would have agreed* for the use taken by the infringer." *Davis v. Gap, Inc.*, 246 F.3d 152, 166-67 (2d Cir. 2001) (emphasis added); *see also Thoroughbred Software Int'l, Inc.  v. Dice Corp.*, 488 F.3d 352, 359-60 (6th Cir. 2007) (following the Second Circuit's approach and awarding reasonable license fee even though infringing software was never actually used); 17 U.S.C. § 504.

### D.    There are Genuine Issues of Material Fact Concerning Whether MTS is Entitled to a Permanent Injunction for Infringement of PSP

In addition to damages, MTS should be permitted to pursue its request for a permanent injunction arising from Defendants' infringement of PSP.  Medizine's sole argument to the contrary – that MTS cannot establish irreparable harm – is inconsistent with case law in this district.  Once MTS has made a prima facie showing of infringement (which it has), irreparable harm is generally ***presumed***.  *Pearson Educ., Inc. v. Nugroho*, No. 08 Civ. 8034, Slip Copy,

14

2009 WL 3429610, at *7 (S.D.N.Y. Oct. 27, 2009); *see, e.g., ABKCO Music, Inc. v. Stellar Records, Inc.*, 96 F.3d 60, 66 (2d Cir.1996.[4]   Moreover, Medizine does not dispute that it continues to possess the infringing iConnect software, including the copied engine.js file.  (*See* Rebak Decl. ¶ 38; SJ Mot. at 1.)  Thus, Medizine continues to maintain this file on its servers and, with it, the ability to use it for reference and development.

Medizine's representation that it is "no longer using the iConnect software" and is willing to agree not to use it in the future does not preclude MTS from showing irreparable harm.  (SJ Mot. at 10 n. 6)  ***First***, MTS's prior assurances on this point have not been reliable.  Indeed, contrary to the representation in Medizine's Summary Judgment motion and supporting Declaration, Medizine continues, even now, to operate aspects of iConnect.  ***Second***, MTS seeks – and is entitled to – far broader relief than Medizine has offered.  MTS's Complaint asks the Court, among other things, to "command Defendants to return and/or destroy any and all copies of…. MTS's copyrighted software…."  (MTS Complaint, Dkt. 1, at 27.)  Medizine continues to possess one or more copies of the infringing iConnect software.  *See Silverstein v. Penguin Putnam, Inc.*, 368 F.3d 77, 84 (2d Cir. 2004) ("[I]t has been said that an injunction should be granted if denial would amount to a forced license to use the creative works of another.").

## II.    Medizine's Motion for Summary Judgment on Count II Should be Denied

Medizine's motion for summary judgment on Count II should be denied based upon principles of equity.  Pursuant to the "work for hire" provisions of Brandt's Employment Agreement (Rebak Decl., ¶ 15 & Ex. 3), MTS owns the iConnect software, which consists of

---

[4]      The Southern District of New York has continued to rely on this presumption after *eBay*, *Warner Brothers Entertainment, Inc. v. RDR Books*, 575 F. Supp. 2d 513, 552 (S.D.N.Y. 2008) ("In view of *eBay*, which applied the traditional four-part test for injunctive relief in the context of a patent claim, there is some question of whether the presumption of irreparable harm still applies. District courts, however, have continued to apply the presumption post- *eBay*.").  Contrary to Medizine's suggestion, *Ebay* was not a copyright case.  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (*See* SJ Mot. at 9.)

copyrightable subject matter, and – but for Defendants' conduct – MTS would have applied to register iConnect months ago.

As discussed in detail above, Brandt conceived and developed the iConnect lead generation software while he was employed at MTS. As the iConnect software relates to or arises out of the services or products of MTS, MTS has sole and exclusive right, title, and interest in the iConnect software pursuant to Brandt's employment agreement. (*See* Rebak Decl., ¶ 15 & Ex. 3.)

Upon discovery of Brandt's relationship with and work for Medizine, MTS demanded a copy of iConnect and indicated its intention to seek federal registration. (Rebak Decl. ¶ 35.) Brandt initially refused to provide the software to MTS, and only later did so on the condition that MTS would not seek to register iConnect. (Rebak Decl. ¶ 36, Ex. 5.) Thus, Brandt created the iConnect software and, upon being discovered, prevented MTS from seeking registration for its own work product. The Court should not permit MediZine to benefit from Brandt's actions.

None of the authorities Medizine cites in support of its assertion that MTS cannot assert a copyright claim based on its ownership of iConnect addresses the situation where, as here, the actions of a defendant are preventing the plaintiff from registering a copyright.[5] Courts have recognized equitable exceptions to the registration requirement of Section 411. *See, e.g., Positive Black Talk, Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 365-66 (5th Cir. 2004) (where plaintiff filed copyright infringement suit before applying for copyright registration, "jurisdictional defect" under section 411 was cured when the Copyright Office received

---

[5] Additionally, the issue of whether Section 411 restricts the subject matter jurisdiction of federal courts, or whether it is merely a "claim processing" rule, is not settled. One of the primary cases Medizine cites in its motion, *In re Literary Works in Electronic Database Copyright Litigation*, 509 F.3d 116 (2d Cir. 2007), is currently before the United States Supreme Court. *See Reed Elsevier, Inc. v. Muchnick*, 129 S. Ct. 1523, 1523 (2009) (granting certiorari on the question: "Does 17 U.S.C. § 411(a) restrict the subject matter jurisdiction of the federal courts over copyright infringement actions?") Thus, if the Court decides to dismiss this count (which it should not), it should do so without prejudice pending the Supreme Court's decision in *Reed Elsevier*.

plaintiff's application); *M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486, 1489 (11th Cir. 1990) (plaintiff's failure to register copyright prior to bringing suit was cured with filing of amended complaint after registration).

Consistent with these decisions, and in light of the unique facts of this case, the Court should not grant summary judgment on Count II until the iConnect ownership issue has been resolved, and MTS is permitted to file a supplemental pleading curing any "jurisdictional defects" in the complaint. *See Positive Black Talk*, 394 F.3d at 366 ("The notion that the supplemental pleading cures the technical [jurisdictional] defect, notwithstanding the clear language of § 411, is consistent with the principle that technicalities should not prevent litigants from having their cases heard on the merits.") Moreover, the Court should release MTS from the provision of the agreement with Brandt precluding it from seeking registration of iConnect. In the alternative, the Court should dismiss the count without prejudice so that MTS can refile the claim upon federal registration of iConnect.

## III. MEDIZINE'S MOTION TO DISMISS COUNT VII SHOULD BE DENIED

MTS's Complaint states a claim under the Computer Fraud and Abuse Act ("CFAA"); specifically, it states a claim under subsections (a)(2)(C) and (a)(4) of Section 1030 of Title 18 of the United States Code against defendants Daniel Brandt and Medizine.[6] Medizine's arguments to the contrary are without merit.

---

[6]     Medizine asserts that MTS has failed to state a claim against it because the Complaint fails to connect Medizine to Brandt's unlawful access of MTS's computers. Count VII, which incorporates the prior allegations in the Complaint (Compl. ¶ 110), *see Shapiro v. Cantor*, 123 F.3d 717, 719 (2d Cir. 1997) (affirming that complaint should be read "as a whole" for purposes of a motion to dismiss), alleges facts sufficient to state a claim against Medizine because Brandt accessed MTS computers as an agent of Medizine, and Medizine is vicariously liable for Brandt's acts pursuant to the doctrine of *respondeat superior. See Charles Schwab & Co. v. Carter*, No. 04 C 7071, 2005 WL 2369815, at *6-7 (N.D. Ill. Sept. 27, 2005) (holding that defendant is liable under CFAA when its "agent improperly accessed a computer at the direction of the principal"); *Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468, 472 (S.D.N.Y. 2004) (same), *aff'd* 166 F.App'x 559 (2d Cir. 2006). In particular, the Complaint alleges that Medizine, through its employee Rowsom, wrongfully engaged Brandt and eTruvian to perform services for Medizine, including the development of an online lead generation platform for it and provision of technical support during business hours, even though it knew that he was an employee of MTS. (*See* Compl. ¶¶ 50-54.)

### A.    Elements Of A Claim Under The Computer Fraud And Abuse Act

The CFAA provides that "[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages."  18 U.S.C. § 1030(g).  A claim is pled under Subsection 1030(a)(2)(C) based on allegations that the defendant "[1] intentionally accesses a computer [2] without authorization or exceeds authorized access, and [3] thereby obtains … information from any protected computer. 18 U.S.C. § 1030(a)(2)(C).  Similarly, a claim is pled under Subsection 1030(a)(4) based on allegations that the defendant "[1] knowingly and with intent to defraud, [2] accesses a protected computer [3] without authorization, or exceeds authorized access, [4] and by means of such conduct furthers the intended fraud and obtains anything of value …."  18 U.S.C. § 1030(a)(3). In addition, a civil action is authorized if the violator's conduct involves "loss to 1 or more persons during any 1-year period … aggregating at least $5,000 in value."  18 U.S.C. § 1030(c)(4)(A)(i)(I); *see id.* § 1030(g); *Modis, Inc. v. Bardelli*, 531 F. Supp. 2d 314, 320-21 (D. Conn. 2008).

Medizine does not deny that MTS's Complaint adequately alleges that:  (1) Brandt intentionally accessed MTS's computers (*see* Compl. ¶¶ 35-36); (2) Brandt obtained information from those computers (*see, e.g.*, Compl. ¶ 43 ("Brandt used MTS's copyrighted software and confidential information to develop an online lead generation platform, called 'iConnect[.]'"); (3) Brandt acted knowingly and with intent to defraud MTS (*see, e.g.*, Compl. ¶¶ 35-36 & 55-56 (describing Brandt's active involvement in MTS's management, day-to-day operations and strategic decision making, while failing to disclose to MTS that he was concurrently developing an online lead generation platform for licensing to a competitor); or (4) as a result of his actions, Brandt furthered the fraud on MTS and obtained information of value (*see* Compl. ¶¶ 6, 43-56,

114, 126 & Ex. A, at 2 ("[Brandt] acknowledges and agrees that access to the Confidential Information constitutes valuable consideration under this Agreement.").

### B.   MTS's Complaint Sufficiently Alleges That Brandt Violated The Computer Fraud And Abuse Act

Medizine's primary argument is that there can be no violation of the CFAA because Brandt had authority to access MTS's computers.  However, Medizine's argument relies on an unduly narrow reading of the statute.

While the Second Circuit has not interpreted the phrase "without authorization or exceeds authorized access," 18 U.S.C. § 1030(a)(2)(C), (a)(4), and there is a split of authority among both the courts of appeals and the district courts, at least two courts of appeals have rejected the narrow reading advanced by Medizine.  Writing for the Seventh Circuit, Judge Posner held that an employee "accesses a computer without authorization or exceeds authorized access" when s/he either breaches a fiduciary duty owed to the employer thereby terminating any rights or authority s/he may have had.  *See International Airport Ctrs., LLC v. Citrin*, 440 F.3d 418, 421 (7th Cir. 2006).  The First Circuit concluded that the element is met when a person uses such access in a manner that violates the provisions of a confidentiality agreement.  *See EF Cultural Travel BV v. Explorica, Inc.*, 274 F.3d 577, 582 (1st Cir. 2001).  *See also United States v. Salum*, 257 F. App'x 225, 230 (11th Cir. 2007) (unpublished opinion) (holding that Salum "exceeded his authority by accessing [a protected computer] for an improper purpose").[7]  In addition, two district courts in this Circuit have likewise held that a claim is stated under the CFAA based on

---

[7]      *LVRC Holdings*, on which Medizine relies, appears to focus primarily on whether an employee acted "without authorization," not whether the employee's actions "exceed[ed] authorized access."  *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1135 (9th Cir. 2009) (holding that "a person uses a computer 'without authorization' under §§ 1030(a)(2) and (4) when the person has not received permission to use the computer for any purpose … or when the employer has rescinded permission to access the computer and the defendant uses the computer anyway."). In addition, in *LVRC Holdings*, there was no applicable confidentiality agreement.  *See id.* at 1132 (noting that "there was no evidence that Brekka had agreed to keep the emailed documents confidential or to return or destroy those documents upon the conclusion of his employment.").

an employee's use of the employer's computer in a manner that violates employment agreements or internal company policies.  *See Modis, Inc.*, 531 F. Supp. 2d at 319 (holding that element of access that exceeded authorization was sufficiently pled by allegations that employee's access was limited by employment agreement to access "in furtherance of [employer's] Business"); *Calyon v. Mizuho Sec. USA, Inc.*, No. 07 Civ. 2241, 2007 WL 2618658, at *1 (S.D.N.Y. Sept. 5, 2007) ("[T]he plain language of the statute seems to contemplate that whatever else, 'without [authorization]' and 'exceeds authorized access' would include an employee who is accessing documents on a computer system which that employee had to know was in contravention of the wishes and interests of his employer.").[8]  The interpretation of the CFAA set forth in *Citrin*, *EF Cultural Travel BV*, and like cases is most consistent with the language of the statute and with congressional intent.[9]

---

[8]     Medizine cites *Jet One Group, Inc. v. Halcyon Jet Holdings, Inc.*, No. 08-CV-3980, 2009 WL 2524864, at *5-6 (E.D.N.Y. Aug. 14, 2009),  as reaching a contrary conclusion. However, there is no indication in there that the former employee was subject to any confidentiality agreements or other policies limiting his access to particular uses, and, in fact, the district court in *Jet One* noted that "the Complaint itself places no qualifiers on  [the former employees'] access." *Id.* at *5.

[9]     Medizine's suggestion that its reading of the statute is the "majority" view (*see* Medizine Mem. at 14 n.7) ignores the trend in the cases.  Medizine fails to acknowledge that **three** of the Courts of Appeals—*Citrin*, *International Airport Centers*, and *Salum*—have rejected a narrow interpretation of "authorization."  In addition to two district courts in this Circuit, *Modis* and *Calyon*, numerous district courts outside this Circuit have rejected the narrow interpretation advanced by Medizine.  *See Lasco Foods, Inc. v. Hall & Shaw Sales, Mktg., & Consulting, LLC*, No. 4:08CV01683, 2009 WL 3523986, at *3 (E.D. Mo. Oct. 26, 2009) (denying motion to dismiss CFAA claim based on employees' use of employer's computerized information for their personal benefit and in contravention of their fiduciary duty to their employer) (citing *Ervin & Smith Adver. & Pub. Rels., Inc. v. Ervin*, No. 8:08cv459, 2009 U.S. Dist. LEXIS 8096, at *24 (D. Neb. Feb. 3, 2009); *Nilfisk-Advance, Inc. v. Mitchell*, No. 05-5179, 2006 U.S. Dist. LEXIS 21993, at *6-7 (W.D. Ark. Mar. 28, 2006); *Personalized Brokerage Servs., LLC v. Lucius*, No. 05-1663, 2006 U.S. Dist. LEXIS 36176, at *6-7 (D. Minn. Jan. 25, 2006)); *Continental Group, Inc. v. KW Prop. Mgmt., LLC*, 622 F. Supp. 2d 1357, 1372 (S.D. Fla. 2009) ("[A]n employer … clearly has a right to control and define authorization to access its own computer systems."); *Hewlett-Packard Co. v. Byd:Sign, Inc.*, No. 6:05-CV-456, 2007 WL 275476, at *13 (E.D. Tex. Jan. 25, 2007) (holding that plaintiff had pleaded unauthorized access where employment agreement prohibited employees "from sending or accessing messages on HP's computer systems for personal gain"); *see also Resource Ctr. for Independent Living, Inc. v. Ability Resources, Inc.*, 534 F. Supp. 2d 1204, 1211 (D. Kan. 2008).  Moreover, two of the decisions that Medizine cites as reflecting the "majority" view are outdated.  In *Lasco Foods, Inc. v. Hall & Shaw Sales, Marketing, & Consulting, LLC*, 600 F. Supp. 2d 1045, 1053 (E.D. Mo. 2009), the court permitted the plaintiff to amend its complaint and, thereafter, *denied* a motion to dismiss the CFAA claim that "sufficiently alleged that [the former employees] acted without authorization when they obtained [employer's] information for their personal use and in contravention of their fiduciary duty to their employer."  *Lasco Foods, Inc.*, 2009 WL 3523986, at *4.  In addition, *Diamond Power Int'l*,

20

1.    *The CFAA Contemplates That Individuals Authorized To Access A Company's Computers May Nevertheless Be Liable*

Medizine's assertion that MTS cannot state a claim for violation of the CFAA as a matter of law given Brandt's access to MTS's software and proprietary information ignores the plain language of the statute, which expressly contemplates that even individuals with authority to access a computer may be in violation of the statute.  As the Seventh Circuit in *International Airport Centers* noted, "the Computer Fraud and Abuse Act" distinguishes between 'without authorization' and 'exceeding authorized access.'"  440 F.3d at 420.  While the semantic difference between the two "is paper thin," *id.*, it has significant legal consequences.  The CFAA defines "exceeds authorized access" as meaning "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter."  18 U.S.C. § 1030(e)(6).  If Congress had wanted to limit liability under the CFAA only to those who had no authority to access a protected computer, it would have done so.  Instead, it expressly created liability for those who have access, but use such access for an improper purpose.  Even the Ninth Circuit in *LVRC* acknowledged that the definition of "exceeds authorized access" in the CFAA "makes clear" that "an individual who is authorized to use a computer for certain ***purposes*** but goes beyond those limitations is considered by the CFAA as someone who has "'exceed[ed] authorized access.'"  581 F.3d at 1133 (emphasis added).

2.    *Congress Intended To Reach Corporate Insiders Who Misuse Their Access To Computers*

Through the CFAA, "Congress intended to address both outside internet hackers and also internal disgruntled programmers."  *Lasco Foods, Inc.*, *v. Hall & Shaw Sales, Mktg., and Consulting, No. 4:08 CV 01683,* 2009 WL 3523986, at *3 (E.D. Mo. Oct. 26, 2009); *see also*

---

*Inc. v. Davidson*, 540 F. Supp. 2d 1322, 1341-43 (N.D. Ga. 2007), was effectively overruled by the Eleventh Circuit in *Salum*, 257 F. App'x 225.

*International Airport Ctrs.*, 440 F.3d at 420.  Thus, Congress contemplated and established liability for corporate insiders who have access to a computer system, yet exceed the scope of their authority by using the information they obtain from such computer system for unauthorized purposes.  In 1984, when the Computer Fraud and Abuse Act was first enacted, Section 1030(a)(2) provided:

> Whoever knowingly accesses a computer without authorization, or having accessed a computer with authorization, uses the opportunity such access provides for ***purposes*** for which such authority does not extend, and thereby obtains information … [shall be punished].

Counterfeit Access Device and Computer Fraud and Abuse Act, Pub. L. No. 98-473, 98 Stat. 2190-91 (Oct. 12, 1984) (emphasis added).  In 1986, Congress amended the CFAA and, among other things, replaced the phrase "having accessed a computer with authorization, uses the opportunity such access provides for purposes for which such authority does not extend" with "exceeds authorized access."  The House Report expressly states, however, that Congress did not intend to enact a substantive change in law; rather "[t]he purpose of this change [was] merely to clarify the language in existing law."  H. Rep. 99-612, 99th Cong., 2nd Sess., at 11 (May 22, 1986).  Thus, Congress did not intend to limit inquiry under the CFAA to whether an individual has access to a computer or to particular information on a computer.  The inquiry includes whether the employer's authority extends to the purpose for which the employee used his access to the protected computer.

The purpose of the statute also supports this interpretation.  Congress sought to regulate access to protected computers, punish unlawful access, and provide a cause of action to those who are injured by such improper access.  *See* H. Rep. 99-612, 99th Cong., 2nd Sess., at 4; S. Rep. No. 101-544, 101st Cong., 2d Sess., 1990 WL 201793, at *6 (Oct. 19, 1990) (observing that the civil remedy "would boost the deterrence of the statute by allowing aggrieved individuals to

obtain relief").   An approach that focuses solely on whether an individual was authorized to access a protected computer is inconsistent with the plain language of the statute and Congress's purpose to limit the harm caused by employees who use their access to computers for an improper purpose.

3.     *MTS's Complaint Adequately Alleges That Brandt Accessed MTS Computers In Excess Of Authorization*

The Complaint alleges that Brandt exceeded his authorized access to MTS computers when he (1) transmitted information to persons not entitled to receive it (*see* Compl. ¶ 111); and (2) used MTS computers to provide services to Medizine (*see id.* ¶ 112).   Such actions were in violation of Brandt's Employment Agreement, (*see id.* ¶ 31 & Ex. A (employment agreement)). Specifically, Brandt agreed "not to disclose any Confidential Information… to any person or entity and not to use, license, sell, transfer, convey, or otherwise exploit or dispose of any Confidential Information, or any portion of any Confidential Information, for any purpose other than for the benefit of MTS …."   (*Id.*, Ex. A, ¶ 3.)   The Agreement defines Confidential Information to include, among other things, "computer software" and "source code."   (*Id.*) Moreover, MTS's internal policies memorialized in its Employee Handbook prohibited "[u]nauthorized disclosure of business 'secrets' or confidential proprietary information."   (*See id.* ¶ 34 & Ex. D (signed acknowledgement by Brandt))

Brandt plainly exceeded the limits of his authorized access when he used MTS software as a basis for developing a competing software product (*see* Compl. ¶ 43), and when he used MTS computers to develop software for Medizine and provide support services to Medizine (*see id.* ¶¶ 53-55), and not "for the benefit of MTS in the performance of [his] employment."   *See EF Cultural Travel BV*, 274 F.3d at 581-82 (holding "that because of the broad confidentiality agreement appellants' actions 'exceeded authorized access'"); *Modis, Inc.*, 531 F. Supp. 2d at

23

319 (holding that plaintiff had pleaded unauthorized access where employment agreement limited defendants' access to plaintiff's database "to access 'in furtherance of Modis' Business'"); *Calyon*, 2007 WL 2618658, at *1 (noting that defendants' acts violated plaintiff's "internal email policies").  Therefore, MTS has adequately alleged that Brandt's accessing of MTS's computers for these improper purposes "exceed[ed] authorized access," so as to state a claim under Sections 1030(a)(2)(c) and (a)(4) of the CFAA.

        4.     *MTS's Complaint Sufficiently Alleges That It Suffered A "Loss" Under The CFAA*

Medizine also contends that MTS has not identified any "damage" under the Act or which factor in Section 1030(c)(4)(A)(i) is involved.[10]  To the contrary, MTS alleges that it has suffered damages "exceeding $5,000, including the costs of conducting a forensic review of the computers accessed by Brandt, … as well as other consequential damages."  (Compl. ¶ 117)

Such damage is compensable under the CFAA.  The CFAA defines the term "loss" as "[1] ***any*** reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and [2] any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service."   18 U.S.C. § 1030(e)(11) (emphasis added).  The "cost of responding to an offense" includes the cost of conducting a forensic review of the computers accessed by a person who obtained information from them without authority. *See Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468, 475 (S.D.N.Y. 2004) ("[T]he meaning of 'loss,' both before and after the term was defined by statute, has consistently meant a cost of investigating or remedying damage to a computer, ***or*** a cost incurred because the

---

[10]     Medizine's citation to subsection 1030(a)(5)(B) is outdated.  *See* Medizine Mem. at 12.  The provision listing the factors to which Medizine refers was codified under subsection 1030(c) in 2008.  *See* Identity Theft Enforcement & Restitution Act of 2008, Pub. L. No. 110-326, 122 Stat. 3560, 3561-62 (Sept. 26, 2008).

computer's service was interrupted.") (emphasis added)), *aff'd* 166 F. App'x 559 (2d Cir. 2006);

*P.C. of Yonkers, Inc. v. Celebrations! the Party & Seasonal Superstore, L.L.C.*, No. 04-4554,

2007 WL 708978, at *5 (D.N.J. Mar. 2, 2007) (allegation that cost of "responding to defendants'

actions, investigating defendants' actions and taking remedial steps to prevent defendants'

further actions" exceeded $5,000 was sufficient to plead "loss" under CFAA, even though losses

were not "derived from any change to the computers themselves or the information contained

therein").

Finally, while the Complaint does not explicitly list which of the factors enumerated in

Section 1030(c)(4)(A)(i) is involved, Paragraph 117 of the Complaint plainly alleges facts

sufficient to show "loss to 1 or more persons during any 1-year period … aggregating at least

$5,000 in value," pursuant to 18 U.S.C. § 1030(c)(4)(A)(i)(I).  (*See* Compl. ¶ 117.)

## IV.   DISMISSAL OF THE FEDERAL COUNTS AGAINST MEDIZINE WOULD NOT AFFECT THIS COURT'S SUPPLEMENTAL JURISDICTION

As set forth above, Medizine is not entitled to either summary judgment on Count I or

II or dismissal of Count VII.  But even if the Court were to dismiss the federal counts against

Medizine without leave to replead, this Court would maintain jurisdiction over Medizine

pursuant to 28 U.S.C. § 1367(a), which includes "claims that involve the "joinder … of

additional parties."  Federal claims remain pending against defendants Brandt, Rowsom, and

eTruvian, who have not moved this Court for relief, and the state law claims against Medizine

form part of the same case or controversy as the claims against those defendants.  Accordingly,

Medizine's suggestion that the Court may dismiss the state law claims against it pursuant to 28

U.S.C. § 1367(c)(3) is misplaced.  *See Johnson v. City of New York*, No. 08 Civ. 5277, 2009 WL

3786594, at *7 (S.D.N.Y. Nov. 12, 2009) (citing *Hansen v. Bd. of Trustees of Hamilton*, 551

F.3d 599, 608 (7th Cir. 2008); 16 *Moore's Fed. Practice* § 106.66 (Matthew Bender 3d ed.)).

25

## CONCLUSION

For the foregoing reasons, this Court should deny Medizine's motion.

Dated: November 19, 2009
      New York, New York

Respectfully submitted,

/s/ Dyan Finguerra-DuCharme
Dyan Finguerra-DuCharme
WILMER CUTLER PICKERING
  HALE AND DORR LLP
399 Park Avenue
New York, NY 10022
Tel.: (212) 937-7200
Fax: (212) 888-2330
dyan.finguerra@wilmerhale.com

Mark G. Matuschak
Jonathan Rosenfeld
Vinita Ferrera
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: (617) 526-6000
Fax: (617) 526-5000
mark.matuschak@wilmerhale.com
jonathan.rosenfeld@wilmerhale.com
vinita.ferrera@wilmerhale.com

*Attorneys for Plaintiff Marketing Technology
Solutions, Inc.*

26